IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| LARRY GENE FRANCIS, | § | |
| Petitioner, | § | |
| | § | |
| v. | § | No. 3:19-cv-01979-N (BT) |
| | § | |
| | § | |
| WARDEN RICHARDSON and | § | |
| LORIE DAVIS, *Director*, TDCJ-CID, | § | |
| Respondent. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Petitioner Larry Gene Francis, a state prisoner, filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2254 and a motion for summary judgment. (ECF No. 33.) For the following reasons, the Court should deny both the § 2254 petition and the motion for summary judgment.

I.

Francis challenges the revocation of his parole. On October 28, 1982, he was convicted of aggravated robbery and was sentenced to life imprisonment. *State of Texas v. Larry Gene Francis*, No. F-82-78622-PI (Crim. Dist. Ct. No. 2, Dallas County, Tex. Oct. 28, 1982). More than thirty years later, on July 15, 2014, he was released to parole. On October 18, 2018, his parole was revoked. After exhausting his state remedies, Francis filed this § 2254 petition challenging the revocation of his parole, in which he argues:

1. There was no evidence supporting the allegations that he violated the terms and conditions of his parole;

2. The Hearing Officer denied him the right to counsel at the parole revocation hearing;

3. The Hearing Officer subjected him to double jeopardy when she found that he did not violate his parole, and also found that he did violate his parole;

4. The Hearing Officer admitted perjured testimony;

5. The Hearing Officer and the Board of Pardons and Parole (Board) denied him due process by not being familiar with the electronic monitoring system;

6. The Board revoked his parole on "false reasons";

7. The revocation was based on a faulty electronic monitoring device which violated his Eighth Amendment right to be free from cruel and unusual punishment;

8. The Hearing Officer allowed inadmissible hearsay;

9. His parole officer, Gerald Nixon, brought the revocation allegations against him in retaliation for complaining about how Nixon was handling his parole;

10. He was denied release on parole because he refused to not sue Nixon for retaliation; and

11. He was denied sufficient notice of the allegations.

II.

Francis's parole revocation hearing was held on October 8, 2018. (ECF No. 34-1 at 2.) The Court has reviewed the audio tapes of the hearing and the documents submitted at the hearing which show the following:

Parole Officer Gerald Nixon testified he was Francis's parole officer at the time of the parole violations. He stated Francis was required to wear an electronic monitoring bracelet and keep an electronic base device in his residence. Nixon testified that if Francis's bracelet showed he was too far away from the base, the device would send an alert.

On September 14 and 15, 2018, Francis's electronic monitor alerted a total of eight times, and reflected that Francis was away from his residence. (ECF No. 34-1 at 17-20.) Officer Nixon stated Francis was on lockdown and could only leave his residence based on a pre-approved schedule. Nixon also submitted documents signed by Francis showing that he was subject to electronic monitoring, and that he was required to remain in his residence unless he received approval to leave. (*Id.* at 11, 13.) Francis was charged with eight violations of failure to submit to the electronic monitoring program. (*Id.*)

Francis testified that his monitoring device was defective, and the device would send alerts when he was in his residence and complying with his parole restrictions. He testified, and claims in his pleadings, that Officer Nixon knew the monitoring device was defective because Nixon was at his residence once when the device falsely alerted, and that he and Nixon had meetings about the device. Nixon, however, disputed that he witnessed a false alert from the device. Nixon stated the device alerted because Francis stepped outside his residence. Francis also claimed the device falsely alerted when he was sleeping and that he called Officer Nixon to

3

report the false alert. Officer Nixon agreed that Francis called him about the alert, but stated the device alerted at that time because Francis failed to respond to a prior alert. Officer Nixon testified the alerts on September 14 and 15 were not normal, and that he would have changed the base device if there had been consistent problems with the monitoring unit.

Probation Officer Miles Davis testified he was Francis's parole officer at the time Francis received the electronic monitoring device. Davis stated Francis's monitoring bracelet malfunctioned when it was first issued to Francis. Officer Davis stated the bracelet was replaced. At the hearing, Francis clarified that although the bracelet was replaced, the base device was not replaced. Officer Davis testified he was no longer Francis's parole officer at the time of the violations and therefore did not have first-hand knowledge of the violations.

At the conclusion of the hearing, the Hearing Officer stated she determined by a preponderance of the evidence that Francis committed the violations.

III.

**A.   Standard of Review**

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254, provides:

> (d)   An application for writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in a State court proceeding.

*See* 28 U.S.C. § 2254(d). Under the "contrary to" clause, a federal habeas court may grant the writ of habeas corpus if the state court arrives at a conclusion opposite to that reached by the United States Supreme Court on a question of law or if the state court decides a case differently from the United States Supreme Court on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 380-84 (2000) . Under the "unreasonable application" clause, a federal court may grant a writ of habeas corpus if the state court identifies the correct governing legal principle from the United States Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. *Id*.

**B.  Francis failed to show his parole revocation violated his due process rights.**

Francis argues the revocation of his parole violated his constitutional rights because: there was no evidence he violated the terms of his parole; the Hearing Officer admitted perjured testimony; the Board revoked his parole based on false reasons; the Hearing Officer admitted hearsay evidence; the Hearing Officer and the Board were not familiar with how the electronic monitoring system worked;

5

the revocation of his parole was based on false alerts and was therefore cruel and unusual punishment; and, he received insufficient notice of the charges.

In *Morrissey v. Brewer*, 408 U.S. 471, 480 (1972), the Supreme Court set out the following minimum requirements of due process for parole revocation hearings: (1) written notice of the claimed violations; (2) disclosure of the evidence against the petitioner; (3) opportunity to be heard in person and to present witnesses and documentary evidence; (4) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (5) a "neutral and detached" hearing body such as a traditional parole board; and (6) a written statement by the factfinders as to the evidence relied on and the reasons for the revocation. *Id.* at 489. Francis has failed to show that the parole revocation violated his due process rights.

The record establishes that Francis received written notice of the charges on September 24, 2018. (ECF No. 34-1 at 35-37.) At the October 8, 2018 revocation hearing, the charges were amended to state the time of each violation. (*Id.*) The Hearing Officer informed Francis he was entitled to five days' notice of the amended charges, and that he could postpone the hearing. But Francis declined to postpone the hearing and signed a waiver of the five-day period. (*Id.* at 33.) He therefore waived any claim that the notice was untimely.

Francis claims the notice of the charges was insufficient because it did not state what acts he committed to cause the electronic monitor to send alerts. At the

6

start of the revocation hearing, however, the Hearing Officer and Probation Officer Nixon discussed the charges and amended the charges to show the time and date of each offense. As stated previously, the Hearing Officer told Francis he could postpone the hearing and receive additional time to prepare, but Francis chose to proceed with the hearing. Francis's claim of insufficient notice is without merit.

Francis's other claims are equally without merit. A Hearing Officer's decision to revoke parole requires only that there be "some evidence" in the record to support the decision. *Villareal v. U.S. Parole Com'n.*, 985 F.2d 835, 839 (5th Cir. 1993). A revocation proceeding is not part of a criminal prosecution. *Morrissey v. Brewer*, 408 U.S. at 471, 480 (1972). The burden of proof is by a preponderance of the evidence—a considerably lower standard than reasonable doubt standard which governs criminal trials. *Villareal*, 985 F.2d at 839. Here, Officer Nixon testified Francis's electronic monitoring system showed that Francis violated the conditions of his parole by being away from his residence without permission on September 14 and 15, 2018. Nixon also submitted records showing the electronic alerts. (ECF No. 34-1 at 23.) Officer Nixon disputed Francis's claim that he witnessed the monitor send a false alert. Nixon also disputed Francis's claim that his monitor falsely alerted when he was sleeping, stating the alert occurred because Francis did not respond to a prior alert. Officer Nixon contradicted Francis's claims that he was allowed to leave his residence and was only subject to curfew restrictions. Nixon submitted documents showing Francis was subject to home

7

confinement at all times unless he received prior written approval to leave his residence. (ECF No. 34-1 at 13.) Francis has submitted no evidence that this condition was removed.

Although Francis disputes his probation officers' testimony, the Hearing Officer determined the witnesses' credibility and found by a preponderance of the evidence that Francis violated the conditions of his parole. The Court finds there was some evidence in the record to support the Hearing Officer's decision.

Francis claims the Hearing Officer improperly admitted hearsay evidence of his conversations with Parole Officer Nixon. But Francis's own prior to statements to Nixon do not constitute hearsay. *See* Tex. R. Evid. 801(e)(2). Further, "there is no categorical bar to using hearsay testimony in revocations proceedings." *Powell v. Cooper*, 595 F. App'x 392, 397-98 (5th Cir. 2014). Francis also claims the Hearing Officer denied his request to retrieve recordings of his conversations with his probation officer from his jail property. The record, however, shows the Hearing Officer told Francis he could postpone the revocation hearing so that he could obtain his tape recordings. Francis chose not to postpone the hearing. Francis has failed to show the state court's denial of his due process claim was unreasonable.

8

### C. Francis failed to show the parole revocation violated his right to be free from double jeopardy.

Francis further claims his revocation violated his right to be free from double jeopardy. He states the Hearing Officer found that he did not violate the conditions of his parole and then, based on the same evidence, found he did violate his parole. The revocation report, and the audio tapes of the revocation, show the Hearing Officer found the original charges were unsustained because the charges were not sufficiently specific. (ECF No. 38 at 12-24.) After Officer Nixon amended the charges to state the dates and times of the violations, the Hearing Officer found that Francis had committed the violations. (*Id.*) Francis's double jeopardy claim is without merit.

### D. Francis failed to establish retaliation.

Next, Francis argues Officer Nixon falsely claimed he violated his parole conditions in retaliation for his complaints against Nixon, and he was denied parole because he refused to agree not sue Nixon for the revocation. To state a claim for retaliation, a prisoner must establish: (1) that he invoked a specific constitutional right; (2) that the defendant intended to retaliate against him for his exercise of that right; (3) a particular retaliatory adverse act; and (4) that, but for the defendant's retaliatory motive, the complained-of adverse act would not have occurred. *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997) (citing *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995). The prisoner must carry the

9

"significant burden" of showing the defendant's retaliatory motive, which requires more than mere conclusory allegations, and the court must "carefully scrutinize" the claim "with skepticism[.]" *Woods*, 60 F.3d at 1166 (quoting *Adams v. Rice*, 40 F.3d 72, 74 (4th Cir. 1994)). The prisoner must present direct evidence of motive or, barring that, allege a chronology of events from which retaliation may be plausibly inferred. *Id.* "The relevant showing in such cases must be more than the prisoner's 'personal belief that he is the victim of retaliation.'" *Johnson,* 110 F.3d at 310 (quoting *Woods v. Edwards*, 517 F.3d 577. 580 (5th Cir. 1995)). Here, Francis offers nothing but his conclusory claims of retaliation. Therefore, his claims are insufficient and should be denied.

**E.    Francis failed to show he was entitled to counsel**

Finally, Francis claims he was entitled to counsel at his revocation hearing. There is no absolute right to counsel during parole revocation proceedings. *See U.S. v. Carrillo*, 660 F.3d 914, 925 (5th Cir. 2011) (explaining that parolees are not automatically entitled to appointed counsel at revocation hearings) (citing *Gagnon v. Scarpelli*, 411 U.S. 778, 790 (1973)). However, a due process right to counsel does exist if the parolee makes a timely request for counsel based on a "colorable claim (i) that he has not committed the alleged violation of the conditions upon which he is at liberty; or (ii) that, even if the violation is a matter of public record or is uncontested, there are substantial reasons which justified or mitigated the violation and make revocation inappropriate, and that the reasons are complex or

10

otherwise difficult to develop or present." *Gagnon*, 411 U.S. at 790. The court also should consider whether the parolee is capable of "speaking effectively for himself." *Id.* at 790-91. States have authority to make a "case-by-case" decision on the need for appointing counsel "in the exercise of a sound discretion." *Id.* at 790. Francis argues he was entitled to counsel because an attorney could have obtained evidence and would have "done better" in presenting his case. (ECF No. 3 at 2.) Francis, however, does not allege that he requested counsel. He also failed to show his case was complex or that he could not effectively speak for himself. He thus has failed to establish he was entitled to counsel at his revocation hearing.

**F.    Summary**

Francis is lawfully restrained because he failed to prove he was denied a constitutionally-protected interest. Accordingly, the state court's decisions to deny relief is not contrary to, or does not involve an unreasonable application of, clearly-established federal law and is not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

IV.

Francis's habeas petition and summary judgment motion should be DENIED because he failed to make a substantial showing of the denial of a federal right.

Signed March 9, 2020.

_____
REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

11

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b) (1) ; FED. R. CIV. P. 72(b) . In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996)(extending the time to file objections to 14 days) .